UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO

FILED
05 DEC 14 AM 11:31
CLERK U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

In re:                                ) Case No. 05-12767
GERMANIE N. GARRETT,                  )
    Debtor.                           ) Adversary Proceeding No. 05-1367
                                      )
AMANDA DARLING AND                    ) Chapter 7
HUNTER DARLING,                       )
    Plaintiffs,                       ) Judge Arthur I. Harris
                                      )
v.                                    )
                                      )
GERMANIE N. GARRETT,                  )
    Defendant.                        )

## MEMORANDUM OF OPINION

On March 7, 2005, Germanie N. Garrett ("Garrett") filed a Chapter 7 petition. On June 22, 2005, plaintiffs Amanda and Hunter Darling ("the Darlings") filed an adversary complaint *pro se* (Docket #7 in main case), objecting to the discharge of debts stemming from a motor vehicle accident with Garrett who was driving while uninsured. After the Darlings filed an amended complaint (Docket #1), Garrett filed a motion to dismiss for failure to state a claim (Docket #11). The Darlings did not respond to the motion. As explained more fully below, Garrett's motion to dismiss is granted because (1) the Darlings do not allege that alcohol or drugs were involved in the accident or that Garrett intended to cause the accident, and (2) knowingly driving while uninsured is not "willful and malicious injury" within the meaning of 11 U.S.C. § 523(a)(6).

## JURISDICTION

Determinations of dischargeability are core proceedings under 28 U.S.C. § 157(b)(2)(I). The Court has jurisdiction over core proceedings under 28 U.S.C. §§ 1334 and 157(a) and Local General Order No. 84, entered on July 16, 1984, by the United States District Court for the Northern District of Ohio.

## STANDARD OF 12(b)(6) MOTION

Garrett brought her motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7012. In evaluating a 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the Court "must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of [plaintiff's] claims that would entitle [plaintiff] to relief." *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993). If matters outside the pleadings are presented, the Court will exclude such matters or construe the motion as a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See, e.g., Angel v. Kentucky*, 314 F.3d 262, 264 (6th Cir. 2002); *Herman v. Hosp. Staffing Servs., Inc.*, 236 B.R. 377, 380-81 (W.D. Tenn. 1999).

2

## FACTUAL AND PROCEDURAL BACKGROUND

As required when considering a 12(b)(6) motion to dismiss, the Court will accept the following facts from the plaintiffs' complaint as true. On September 7, 2003, a motor vehicle accident occurred involving Garrett, an uninsured motorist, and the Darlings. The Darlings suffered serious and extensive injuries, and the police cited Garrett for the accident. In an earlier filing with the Court (Docket #7 in main case), Amanda Darling recounted the extensive injuries that she and her husband suffered and eloquently described the serious consequences that resulted from Garrett's driving without insurance:

> Ms. Garrett has caused a great deal of bodily harm that will affect us for the rest of our lives.
>
> ... Our medical bills are in the hundreds of thousands of dollars. We have suffered enormously due to the neglect of Ms. Garrett. If she is able to claim our lawsuit under bankruptcy, we will continue to be affected by the financial burden Ms. Garrett has created.
>
> She has already taken the most precious thing in our lives, our health. Now, she wants to affect our future [b]y sticking the financial burden on us.

The Darlings brought a civil action to recover their damages.

Prior to a resolution of the Darlings' civil action, Garrett filed a Chapter 7 petition on March 7, 2005. On the bankruptcy schedules, Garrett listed Mrs. Darling as a creditor with a disputed and unliquidated claim resulting from

3

the accident. On March 16, 2005, the Honorable Vincent A. Culotta of the Lake County Court of Common Pleas entered judgment against Garrett and on behalf of Mrs. Darling for $450,000 and Mr. Darling for $250,000. On April 15, 2005, the Chapter 7 trustee entered a "No Asset Report," and on June 13, 2005, Garrett received a discharge.

Based on these facts, the Darlings ask this Court to find that $38,000 of their claim against Garrett is nondischargeable: (1) $18,000 attributable to the patient responsibility portion of their medical bills, and (2) $20,000 attributable to lost wages and employee benefits. The Darlings' complaint does not indicate which exception to discharge applies. In her motion to dismiss for failure to state a claim upon which relief can be granted, Garrett argues that debts stemming from negligent driving and debts stemming from an accident caused by an uninsured motorist are dischargeable in bankruptcy.

## DISCUSSION

"Except as provided in section 523 . . . , a discharge [under Title 11] discharges the debtor from all debts that arose before the [filing of the petition]." 11 U.S.C. § 727(b). Garrett's debt to the Darlings is a prepetition debt because it arises out of a motor vehicle accident which occurred prepetition. Judge Culotta issued a $700,000 judgment a week after Garrett filed her bankruptcy petition, but

4

this postpetition judgment is potentially voidable since it was entered without first seeking relief from the automatic stay. *See* 11 U.S.C. § 362(a)(1); *Easley v. Pettibone Mich. Corp.*, 990 F.2d 905, 909-12 (6th Cir. 1993) ("[A]ctions taken in violation of the stay are invalid and voidable and shall be voided absent limited equitable circumstances."). Whether the postpetition judgment should be voided is not before the Court and is immaterial. Garrett's debt, whether or not it is reduced to judgment, is a prepetition debt which is subject to discharge under subsection 727(b).

A prepetition debt escapes discharge under subsection 727(b) only if it meets one of the enumerated exceptions to discharge found in section 523. Only two subsections of section 523 contain exceptions to discharge that might apply to a debt resulting from a motor vehicle accident involving an uninsured motorist: subsections 523(a)(6) and (9).

Subsection (a)(9) applies to debts resulting from "death or personal injury caused by the debtor's operation of a motor vehicle" while intoxicated by alcohol, a drug, or another substance. That subsection does not apply in this case because the complaint makes no allegation regarding the involvement of alcohol, a drug, or another substance in the accident.

Subsection (a)(6) applies to debts for "willful and malicious injury by the

debtor." The complaint does not allege that Garrett willfully and maliciously caused the accident. Rather, the complaint states that Garrett was "cited for [the] accident" and that she was uninsured. Thus, the only allegation in the complaint which might support nondischargeability is that Garrett was driving while uninsured. The issue then is whether unintentionally causing a motor vehicle accident while *knowingly driving without insurance* constitutes "willful and malicious" injury within the meaning of 11 U.S.C. § 523(a)(6).

*Willful and Malicious Injury*

In *Kawaauhau v. Geiger*, 523 U.S. 57 (1998), the Supreme Court clarified the meaning of "willful and malicious injury" as it appears in subsection 523(a)(6). In *Geiger*, an injured patient obtained a $355,000 judgment against an uninsured physician. The physician then filed bankruptcy, and the patient challenged the dischargeability of the debt under subsection 523(a)(6). *Id.* at 59-60. Holding the debt to be dischargeable, the Court commented:

> The word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional *injury,* not merely a deliberate or intentional *act* that leads to injury.

*Geiger*, 523 U.S. at 61. The Court went on to hold that the formulation of subsection (a)(6) indicates a Congressional intent to hold nondischargeable only those debts resulting from intentional torts, not those resulting from negligent or

6

reckless torts. *Id.* The Sixth Circuit has elaborated on the *Geiger* case:

> The [*Geiger*] Court's citation to the Restatement's definition of "intentional torts" underscores the close relationship between the Restatement's definition of those torts and the definition of "willful and malicious injury." The Restatement defines intentional torts as those motivated by a desire to inflict injury or those substantially certain to result in injury. . . . [F]rom the Court's language and analysis in *Geiger*, we now hold that unless "the actor desires to cause consequences of his act, or . . . believes that the consequences are substantially certain to result from it," he has not committed a "willful and malicious injury" as defined under § 523(a)(6).

*In re Markowitz*, 190 F.3d 455, 464 (6th Cir. 1999) (citation omitted).

The *Geiger* decision overruled case law in several Circuits, including the Sixth Circuit, that had interpreted subsection (a)(6) to except a debt from discharge if it resulted from a willful and intentional act that necessarily lead to an injury. *See, e.g., Perkins v. Scharffe*, 817 F.2d 392 (6th Cir. 1987) (holding that willful and malicious injury requires an actor to intend an act but does not require the actor to intend the consequences of the act). This prior interpretation of the subsection (a)(6) resulted in conflicting decisions regarding the dischargeability of damages caused by uninsured motorists. Some courts held that knowingly driving without insurance is an intentional act which necessarily leads to an injury and therefore is "willful and malicious injury." *See In re Ussery*, 179 B.R. 737 (Bankr. S.D. Ga. 1995); *In re Whipple,* 138 B.R. 137 (Bankr. S.D. Ga. 1991); *In re Pechar,* 78 B.R. 568 (Bankr. D. Neb. 1987). Other courts, however, reasoned that,

7

when the insurance terminated, there was no intent to harm the injured party and that the failure to maintain insurance is not the act which causes harm to the injured party; that some further event, such as an accident, causes the harm.

*In re Brown,* 201 B.R. 411, 414-15 (Bankr. W.D. Pa. 1996) (cataloging numerous decisions holding that the intentional failure to carry insurance is not "willful and malicious" for the purposes of subsection 523(a)(6)).

*Geiger* resolves the issue regarding the dischargeability of damage claims against uninsured motorists. *Geiger* requires an intentional injury, as opposed to an intentional act which leads to an injury. Under *Geiger* and *Markowitz*, this Court can only find "willful" injury under subsection 523(a)(6) if (1) the actor desired to cause the consequences of the act or (2) the actor believed that the given consequences of his or her act were substantially certain to result from the act. Drivers who drive without insurance do not intend to cause accidents, nor do they think harm to others is substantially certain to result.

Other courts since *Geiger* have also concluded that failure to maintain insurance is not willful and malicious injury. *See In re Popa*, 140 F.3d 317 (1st Cir. 1998) (employer did not obtain workmen's compensation insurance and employee was attacked and beaten while at work); *In re Shahrokhi*, 266 B.R. 702 (B.A.P. 8th Cir. 2001) (lessor of taxicab failed to obtain insurance and lessee

8

slipped and fell); *In re Groff*, 301 B.R. 644 (Bankr. D. N.J. 2003) (uninsured and unlicensed motorist killed a nine-year-old girl); *In re Caffey*, 248 B.R. 920, 922 (Bankr. N.D. Ga. 2000) (uninsured motorist killed women shortly after consuming alcohol).

While the Court sympathizes with the Darlings and with the situation in which the accident and Garrett's bankruptcy have left them, the Court cannot ignore the Bankruptcy Code and impose what it feels is a fairer result. *See United States v. Noland*, 517 U.S. 535, 543 (1996) (holding that equitable powers cannot contravene policy choices that Congress made in drafting Bankruptcy Code and citing *In re Ahlswede*, 516 F.2d 784, 787 (9th Cir. 1975) ("[T]he [equity] chancellor never did, and does not now, exercise unrestricted power to contradict statutory or common law when he feels a fairer result may be obtained by application of a different rule.")); *Pennsylvania Dept. of Public Welfare v. Davenport*, 495 U.S. 552, 565 (1990) (holding that criminal restitution payments are dischargeable under Chapter 13 and noting, "Where, as here, congressional intent is clear, our sole function is to enforce the statute according to its terms"), *superseded by statute*, Criminal Victims Protection Act of 1990, Pub. L. No. 101-581, § 3, 104 Stat. 2865; *In re Highland Superstores, Inc.*, 154 F.3d 573, 578-79 (6th Cir. 1998) ("Bankruptcy courts simply do not have free rein to ignore

9

a statute in the exercise of their equitable powers pursuant to 11 U.S.C. § 105.").

The Court holds that unintentionally causing an accident while knowingly driving without insurance is not willful and malicious injury under subsection 523(a)(6). Thus, the Darlings' adversary complaint fails to state facts sufficient to support a claim of nondischargeabililty for their prepetition damages arising from the motor vehicle accident with Garrett.

## CONCLUSION

For the foregoing reasons, Garrett's motion to dismiss the Darlings' adversary complaint is granted. While the Darlings cannot attempt to collect on their judgment against Ms. Garrett, under 11 U.S.C. § 524(f), nothing in this Court's decision or in the Bankruptcy Code prevents Ms. Garrett from voluntarily repaying any portion of this debt.

IT IS SO ORDERED.

Arthur I. Harris
United States Bankruptcy Judge

10